**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 24-100-DLB**

**SLANSKY CADET**                                                       **PETITIONER**

**v.**                      **MEMORANDUM OPINION AND ORDER**

**WARDEN FCI ASHLAND**                                  **RESPONDENT**

\*\*\* \*\*\* \*\*\* \*\*\*

Federal inmate Slansky Cadet has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 challenging the imposition of disciplinary sanctions against him. (Doc. # 1). The Court must screen the petition pursuant to 28 U.S.C. § 2243. *Pillow v. Burton*, 852 F. App'x 986, 989 (6th Cir. 2021).

**I.**     **Factual and Procedural Background**

On March 11, 2024, Cadet was charged with possession of a hazardous tool (a cell phone), a Prohibited Act Code 108 offense, and assault, a Prohibited Act Code 224 offense. *See* (Doc. # 1-1 at 5). The Incident Report was delivered to Cadet on March 13, 2024, following a brief delay occasioned by a pending decision whether to criminally prosecute Cadet for his actions and to re-write the Incident Report to include additional information. *See id.* at 6, 7. A Disciplinary Hearing Officer held a hearing on March 26, 2024, and found Cadet guilty of both offenses. The DHO imposed various sanctions including the loss of 68 days of good conduct time. *See* (Doc. # 1-1 at 6-11). The DHO Report was delivered to Cadet on June 18, 2024. *See id.* at 11.

1

Cadet's appeal of his disciplinary convictions, see (Doc. # 1-1 at 1, 23), was received by the Mid-Atlantic Regional Office ("MARO") on July 15, 2024. See (Doc. # 1-1 at 12). Because it was due by July 8, 2024, MARO rejected the appeal as untimely. See id. Cadet appealed the rejection, providing the Bureau of Prisons ("BOP")'s Central Office with documentation supporting his assertion that his appeal was mailed on July 5, 2024, three days before it was due. See id. at 14-17, 20. Nonetheless, on August 26, 2024, the Central Office affirmed MARO's rejection of Cadet's untimely appeal. See id. at 18. Cadet filed a second appeal with MARO, this time asserting that his earlier appeal was timely under the prison mailbox rule. He also provided additional documentation showing that he had handed his appeal to prison officials for mailing to MARO on July 3, 2024, five days before it was due. See id. at 14-17, 20. MARO again rejected this appeal as untimely. See (Doc. # 1-1 at 20-23).

In his petition, Cadet contends that his due process rights were violated in two respects. First, he complains that he was never given the "original" Incident Report, but only a rewritten version. This, he states without explanation, is impermissible because a rewritten Incident Report can only be given after the original is delivered. See (Doc. # 1 at 6; # 1-1 at 1). Second, he complains that the Incident Report was not signed by hand; instead, the officers' names are only typewritten. See id.

II.   Discussion

The Court has thoroughly reviewed the petition, but will **deny** relief for two reasons. First, Cadet failed to properly exhaust his administrative remedies. It is well established that "federal prisoners are required to exhaust their administrative remedies before filing a habeas corpus petition under § 2241." Leslie v. United States, 89 F. App'x 960, 961

(6th Cir. 2004). And "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Here, Cadet's first appeal to MARO was received well after the 20-day deadline, *see* 28 C.F.R. § 542.15(a), and the BOP properly rejected it on that ground. For an appeal to be considered timely, the BOP requires it to be actually received, not merely mailed, before the deadline. *See* BOP Program Statement 1330.18 § 9 (Jan. 6, 2014) ("These deadlines specify the date of the Appeal's receipt in the regional office or the Central Office. The deadlines have been made deliberately long to allow sufficient mail time. Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt."). The Court therefore rejects any argument that the prison mailbox rule applies to inmate grievances or appeals. *See Trotman v. Smith*, 796 F. App'x 764, 766 n.4 (3d Cir. 2020); *Nigro v. Sullivan*, 40 F.3d 990, 996 (9th Cir. 1994); *McGuire-Mollica v. Griffin*, No. 7:20-CV-01768-SGC, 2024 WL 1018524, at *5 (N.D. Ala. Mar. 8, 2024); *Tucker v. Jones*, No. 2:17-CV-133, 2018 WL 3557462, at *5 (S.D. Ga. July 24, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 4688721 (S.D. Ga. Sept. 28, 2018).[1]

Of course, the exhaustion requirement for Section 2241 petitions is judge-made so it, in contrast to statutory exhaustion rules, is subject to equitable exceptions. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) ("No doubt, judge-made exhaustion doctrines remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on a different footing.") (cleaned up). Nonetheless, the Court sees no reason to waive the exhaustion requirement in this instance. Cadet is not wrong when he notes that it is unusual for an envelope to take ten days to travel from Kentucky to MARO's headquarters

---

[1] Cadet's second appeal to MARO was both untimely and procedurally improper because the Central Office had already decided the question of the timeliness of Cadet's first appeal.

3

in Maryland. But most of those days occurred from July 9 to July 15, after his mailing was already too late. And a closer examination reveals that he could and should have expected the mail delay for the five days before the deadline had expired. Cadet handed his appeal to prison officials for mailing to MARO on July 3, 2024 (a Wednesday), five days before it was due on July 8, 2024 (a Monday). Thus, one of those five days was a Sunday and another of those days was the Fourth of July, meaning that postal employees would not be working for two of the five days. Under those circumstances, Cadet waited until far too close to the deadline – just three days – for receipt to justify any equitable exception to the exhaustion requirement.

Second, on its merits, Cadet fails to demonstrate any violation of his due process rights to warrant habeas relief. A prisoner may invoke this Court's habeas corpus jurisdiction under 28 U.S.C. § 2241 to challenge on due process grounds the disallowance or forfeiture of good conduct time. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). Before such credits are taken, due process requires that the inmate be given:

(1)  written notice of the charges against him at least 24 hours before the administrative hearing on the charges;

(2)  a hearing before an impartial decision-maker;

(3)  assistance from a competent inmate or staff member, if the inmate requests one and he will likely be unable to present a defense because he is illiterate or the case is too complex for him to comprehend;

(4)  the opportunity to call witnesses and present documentary evidence, if doing so would not jeopardize institutional safety or correctional goals; and

(5)  a written statement by the hearing officer explaining the evidence relied upon and the basis for the decision.

4

*Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974).  Due process also requires the prison disciplinary board's decision to be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).  Because the quantum of evidence required to meet that standard is minimal, the reviewing court need not re-examine the entire record, independently assess the credibility of witnesses, or weigh the evidence.  Instead, it need only confirm that "there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Id*. at 454-55 (emphasis added); *Selby v. Caruso*, 734 F. 3d 554, 559 (6th Cir. 2013).

The Bureau of Prisons has included these and even broader protections by regulation.  See 28 C.F.R. §§ 541.5 - 541.8; BOP Program Statement 5270.09 (Nov. 2020).  However, an agency's failure to strictly comply with its own policies does not violate due process.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *United States v. Rutherford*, 555 F.3d 190, 192 (6th Cir. 2009) ("[T]he Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the Due Process Clause.").

Cadet's two contentions fail to demonstrate any due process violation.  He first argues that he was entitled to receive an "original" Incident Report before receiving a rewritten version of it.  But nothing in the Constitution, BOP regulations, or the applicable Program Statement so require.  All due process requires is that he receive some form of written notice of the charges against him at least 24 hours before the disciplinary hearing. *Wolff*, 418 U.S. at 564-70.  This Cadet received, and he does not argue otherwise.

Cadet also complains that the charging officer typed his name on the Incident Report instead of writing his signature on it by hand.  But there is no legal requirement

5

that the Incident Report be signed at all, let alone by hand. *See Mason v. LeMaster*, No. 23-CV-45-DLB, 2024 WL 3572272, at *3 (E.D. Ky. July 29, 2024); *Lytle v. Warden, FCI-Bennettsville*, No. 5:16-CV-2277-TMC-KDW, 2018 WL 4560573, at *10 (D.S.C. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 4178448 (D.S.C. Aug. 31, 2018) ("Petitioner cannot show that his due process rights were violated even if he did not receive a signed copy of the Code 297 incident report because *Wolff* does not require any specific signature on a notice document."). The Incident Report provided Cadet of adequate notice of the charges against him, satisfying due process requirements. Because Cadet does not establish any violation of his rights, his petition will be denied.

Accordingly, it is **ORDERED** as follows:

1. Slansky Cadet's petition (Doc # 1) is **DENIED**.

2. This matter is **STRICKEN** from the docket.

This 5th day of November, 2024.

Signed By:
*David L. Bunning* DB
United States District Judge

G:\Judge-DLB\DATA\ORDERS\PSO Orders\Cadet 0-24-100 Memorandum.docx